UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LISA MARIE CARDONE, | No. ED CV 13-1197-PLA |
|     Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
|     Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 10, 2013, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 5, 2013, and August 12, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 1, 2014, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 23, 1966. [Administrative Record ("AR") at 80-81.] She has a GED, completed approximately one year of college, and has past relevant work experience as a nurse assistant and home attendant. [AR at 44-45, 160, 165, 205.]

On October 27, 2009, plaintiff protectively filed an application for Supplemental Security Income payments, alleging that she has been unable to work since December 1, 2008. [AR at 24, 43, 140-46, 154.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 24, 82-86, 91-94, 96-98.] A hearing was held on November 22, 2011, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 24, 40-79.] A vocational expert ("VE") also testified. [AR at 73-77.] On February 3, 2012, the ALJ issued a decision concluding that plaintiff was not disabled. [AR at 24-35.] Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on May 22, 2013. [AR at 1-6, 15-16.] When the Appeals Council denied plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the

Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.'").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires

the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her application date, October 27, 2009. [AR at 26.] At step two, the ALJ concluded that plaintiff has the severe impairments of "degenerative joint disease of the left hip with history of left hip replacement in 2008; obesity; bipolar affective disorder; post traumatic stress syndrome; [and] polysubstance dependence, in remission." [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform sedentary work as defined in 20 C.F.R. § 416.967(a),[2] with additional limitations. [AR at 28.] Specifically, the ALJ determined:

---

[1]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]    20 C.F.R. § 416.967(a) defines "sedentary" as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

4

> [plaintiff] can lift and carry twenty pounds occasionally, ten pounds frequently. [Plaintiff] can stand and/or walk for two hours in an eight-hour workday. [Plaintiff] can sit for six hours in an eight-hour workday. [Plaintiff] can never climb ladders, ropes or scaffolds, but may occasionally climb ramps and stairs, and occasionally stoop, crouch, and crawl. [Plaintiff] is limited to work involving simple repetitive tasks. [Plaintiff] is limited to work involving no more than occasional contact with the [sic] co-workers and the public.

[Id.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 33.] At step five, based on plaintiff's RFC, vocational factors and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "bench assembler, small products," or "assembler electrical equipment." [AR at 34.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since October 27, 2009. [AR at 34.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that substantial evidence does not support the ALJ's findings at step five as to the numbers of jobs that are available in the regional and national economy that plaintiff can perform. [Joint Stipulation ("JS") at 4-14, 20-24.] As explained below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

/

/

---

tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

**The ALJ Properly Relied on the VE's Testimony at Step Five**

Plaintiff contends that substantial evidence does not support the ALJ's finding that a significant number of jobs exists in the economy that plaintiff could perform, and specifically that additional evidence submitted by plaintiff to the Appeals Council demonstrates that there were significantly fewer jobs that plaintiff could perform available in the economy than indicated by the VE.  [JS at 4-14, 20-24.]

At step five, the Commissioner bears the burden of proof to "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); see also Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012); 20 C.F.R. § 416.960(b)(3).  The ALJ can meet this burden at step five by either taking the testimony of a VE or by referring to the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids").[3]  See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006).  If the ALJ chooses to rely upon the testimony of a VE, the hypothetical posed to the VE must be "accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101.  If the hypothetical presented to the VE reflects all of the claimant's limitations and is supported by substantial evidence, the ALJ may rely on the VE's response. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  A VE's recognized expertise provides the necessary foundation for his or her testimony, and no additional foundation is required.  Id. at 1218.

At the administrative hearing, the VE testified that a person having the limitations identified by the ALJ could perform jobs existing in significant numbers in the regional and national economy.  [AR at 74-77.]  Specifically, the VE testified as follows:

> [ALJ]:   [C]onsider an individual [who is currently age 45, who has a GED, who attended vocational nurse instruction,

---

[3] "The grids categorize jobs by their physical-exertional requirements and .... direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." Tackett, 180 F.3d at 1101 (citations and footnote omitted).

|        |         |                                                                                                                                                                                                                                                                                                                                                                                                                      |
|--------|---------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|        |         | does not have a college degree, who has the work background of [plaintiff] and has the following function limitations; can lift and carry twenty pounds occasionally and ten pounds frequently, can stand and walk for two hours in an eight-hour work day and sit for six hours in an eight-hour work day, cannot climb ladders, rope or scaffolds, can occasionally climb ramps and stairs, and can occasionally stoop, crouch, and crawl, [and who]] would be limited to work involving simple, repetitive tasks. ... Could such a person do any work in the national economy? |

*****

[VE]: Yes. ... With that hypothetical, the person would be able to work as a bench assembler, small products. ... There are approximately 68,000 jobs nationally and about 1,500 regionally.

*****

Similarly, assembler, electrical equipment, sits at benches. ... There are approximately 50,000 jobs nationally and about 1,900 regionally. With that hypothetical, the person would be able to work as a cashier II but at the sedentary level. ... There are approximately 80,000 jobs nationally and about 2,000 regionally.

[ALJ]: Okay. ... If this [same] individual ... were limited to no more than occasional contact with coworkers and the public, could this person do the work of the bench assembler or the assembler of electric products?

*****

[VE]: Yes, but not the cashier II.

*****

[ALJ]: If this individual were totally unable to stoop ... due to back and hip pain .... [w]ould that pose problems for the bench assembler or the assembler, the electrical assembler?

[VE]: No.

*****

[ALJ]: [F]or the next question, I'm going to add another physical limitation of no walking on uneven ground or avoid any walking on uneven ground. Would that pose any problems for the job?

| | | |
|---|---|---|
| [VE]: | No. | |
| [ALJ]: | No. Okay. And for the next question, assume an individual with all the limitations I've indicated thus far, but this person also due to pain and fatigue from impairments would need to rest for one to two hours, up to two hours in a work day, and this is above and beyond normal work breaks, could this person do any of the jobs that you've specified? | |
| [VE]: | Well, if it were one hour, that would be about twelve percent of the day. Two hours, however, would be at my cutoff at twenty percent, being at that point I say that essentially, there's no work in the competitive labor market at that point. | |

[AR at 74-77.]

After the ALJ issued his adverse decision, plaintiff submitted additional vocational evidence to the Appeals Council. [See AR at 219-24.] Specifically, plaintiff submitted reports from "Job Browser Pro," a "tool used by [VEs] in the divination of the number [of] jobs in the economy." [JS at 7.] According to the information contained in these reports, there were significantly fewer "bench assembler or small products I assembler" and "subassembler" jobs available in the regional and national economy than indicated by the VE. [AR at 220.] After considering the additional evidence submitted by plaintiff, the Appeals Council denied review, noting that the evidence did not provide a basis for changing the ALJ's decision. [AR at 1-6.]

As an initial matter, to the extent the Appeals Council considered the Job Browser Pro reports in deciding whether to review the ALJ's decision, this Court also must consider such evidence in determining whether the ALJ's decision was supported by substantial evidence and free from legal error. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162-63 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); see also Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1231 (9th Cir. 2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was

free of legal error") (citing Ramirez v. Shalala, 8 F.3d 1449, 1451-54 (9th Cir. 1993)). A reversal or remand is not warranted on the asserted basis.

First, substantial evidence supports the ALJ's non-disability determination at step five. Plaintiff does not dispute the accuracy of the hypothetical question the ALJ posed to the VE. [See JS at 5.] Thus, the VE's testimony in response to the ALJ's complete hypothetical question, without more, was substantial evidence supporting the ALJ's determination that plaintiff was able to perform work that exists in significant numbers in the national economy, and the ALJ was entitled to rely on it. See 20 C.F.R. § 416.966(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a [VE] or other specialist."); Bayliss, 427 F.3d at 1217-18 ("The ALJ's reliance on testimony the VE gave in response to the hypothetical . . . was proper."). See also Social Security Ruling ("SSR") 83-14,[4] 1983 WL 31254, *4. Further, the VE's testimony amounts to substantial evidence. Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001) (testimony of a VE constitutes substantial evidence). Plaintiff notes that the ALJ "did not inquire how the [VE] derived the numbers of jobs," and asserts that plaintiff's "attorney at the hearing wholly abdicated the responsibility to inquire." [See JS at 5-6.] But neither the ALJ nor the VE was required to identify the methodology used to determine the jobs plaintiff can perform; rather, the VE's expertise alone was a sufficient foundation. Bayliss, 427 F.3d at 1218 ("A VE's recognized expertise provides the necessary foundation for his or her testimony," and thus, "no additional foundation is required").

---

[4] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

Second, plaintiff's lay assessment[5] of the raw vocational data derived from Job Browser Pro does not undermine the reliability of the VE's opinion, which the ALJ adopted at step five. [AR at 34.]  The data presented by plaintiff -- while it included some information as to the methodology used to determine the size of each of the Occupational Employment Survey ("OES") Groups [see, e.g., AR at 221-24] -- was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context. Moreover, although in determining whether a significant number of jobs exists in the national economy, the Commissioner "take[s] administrative notice of reliable job information available from various governmental and other publications," Job Browser Pro is not among those publications specifically listed by the Commissioner. (See 20 C.F.R. § 416.966(d)).  Furthermore, while plaintiff identifies several decisions in which courts have acknowledged that a VE's testimony that relies on Job Browser Pro data may constitute substantial evidence, none holds that a VE must rely on it or that this source controls when it conflicts with the VE's testimony.[6]

---

[5] Along with plaintiff's submission of additional exhibits to the Appeals Council, plaintiff's counsel wrote: "According to Job Browser Pro [("JBP")] . . . , the occupation of a bench assembler or small products I assembler . . . represents only 10 jobs in the Riverside-San Bernardino region, 80 in the entire State of California, and 936 in the nation. According to JBP, the occupation of a subassembler . . . represents only 57 jobs in the region, 1,144 in the state, and 9,597 in the nation. Considering both occupations together does not result in a significant number of jobs in the region in which [plaintiff] lives or in several regions of the country." [AR at 220.]

[6] See, e.g., Poisson v. Astrue, 2012 WL 1067661, at *9 (D.Me. March 28, 2012) (holding a VE's "testimony as to job numbers sufficiently reliable to support a Step 5 finding," where the VE "relied on her professional experience and expertise, and not strictly on a software program, in endorsing the numbers provided to the [ALJ]."), report and recommendation adopted, 2012 WL 1416669 (D.Me. Apr. 24, 2012); Cole v. Astrue, 2011 WL 5358557, at *26 (D.Or. June 7, 2011) (vocational expert testimony based, in part, on information obtained from "Skill Trend by Job Browser" was reliable evidence of the number of jobs available in the national economy that plaintiff could perform), report and recommendation adopted, 2011 WL 5358550 (D.Or. Nov. 4, 2011); Pitts v. Astrue, 2011 WL 2553340, at *6 (N.D. Ohio May 19, 2011) (ALJ "listed several legitimate reasons for crediting the testimony of the VE, ... and the record supports his decision to do so. Although the VE confirmed that the Job Browser Pro program was a valid source of information on which he relied, [the VE] also stated that he relied upon other sources. ... Thus, his testimony was not based solely upon the information listed in the OES. ... Plaintiff has not pointed to any case law, rule or regulation requiring the VE's testimony to be consistent with the OES."), report and recommendation adopted, 2011 WL 2553311 (N.D. Ohio June 28, 2011);
(continued...)

Third, even assuming that the data from Job Browser Pro constitutes substantial evidence, the data would only support an alternative finding regarding the number of jobs available for plaintiff in the economy.[7] See Valenzuela v. Colvin, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013) ("[A]ssuming *arguendo* that the data from Job Browser Pro constitutes substantial evidence, the data, at best, would support an alternative finding regarding the number of job[s] available for plaintiff in the economy."). The Ninth Circuit has held that "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Moreover, when the record contains ambiguous or conflicting evidence, the Administration is responsible for resolving the conflict. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001). As such, the ALJ's decision should be upheld.

Fourth, as plaintiff concedes, plaintiff's counsel at the hearing failed to challenge the VE's job numbers, inquire about the methodology used to derive those numbers, or present competent evidence regarding other jobs data. [See JS at 6; AR at 77.] Rather, plaintiff waited until after the ALJ's adverse decision to submit alternative job data to the Appeals Council. "Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed." Solorzano v. Astrue, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012)

---

[6](...continued)
Drossman v. Astrue, 2011 WL 4496568, at *7-*8 (N.D. Ohio July 15, 2011) (ALJ properly relied on VE's opinion regarding job availability rather than plaintiff's post-hearing submission of conflicting statistical information from Job Browser Pro program), report and recommendation adopted, 2011 WL 4496561 (N.D. Ohio Sept. 27, 2011).

[7] In Exhibits 1-20 to the Joint Stipulation, plaintiff for the first time presents supplemental data on jobs, including data from the United States Census Bureau's "County Business Patterns" ("CBP") (Exhibits 1-5), and the United States Department of Labor, Bureau of Labor Statistics (Exhibits 6-20), explaining that the Commissioner takes administrative notice of the CBP and making further reference to these sets of data in reference to the particular jobs identified by the VE. (See JS at 9-12; see also 20 C.F.R. § 416.966(d)). As discussed above, such data may, "at best, ... support an alternative finding regarding the number of job[s] available for plaintiff in the economy." Valenzuela, 2013 WL 2285232, at *4 (emphasis added). As such, the Court upholds the Commissioner's conclusion. Thomas, 278 F.3d at 954.

(rejecting plaintiff's contention that "apparent conflicts" existed between the VE's testimony and the Dictionary of Occupational Titles when plaintiff's counsel failed to question the VE at the hearing about any alleged conflicts or request the ALJ do so).

Accordingly, for these reasons, this Court finds no reversible error and upholds the Appeals Council's decision[8] notwithstanding any conflict between the VE's testimony and the vocational evidence submitted by plaintiff to the Appeals Council.[9]

## VI.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is **denied**; (2) the decision of the Commissioner is **affirmed**; and (3) the Clerk of the Court shall serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 18, 2014

/s/ Paul L. Abrams
　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[8] Courts in this district consistently have reached the same conclusion on this issue. See, e.g., Valenzuela, 2013 WL 2285232; Engrave v. Colvin, 2013 WL 1661754 (C.D. Cal. April 17, 2013); Gonzales v. Colvin, 2013 WL 1614937 (C.D. Cal. April 15, 2013); McCaleb v. Colvin, 2013 WL 1516259 (C.D. Cal. April 12, 2013); Newsome v. Colvin, 2013 WL 800699 (C.D. Cal. Mar. 4, 2013); Gardner v. Colvin, 2013 WL 781984 (C.D. Cal. Mar. 1, 2013); Bradley v. Astrue, 2012 WL 5902349 (C.D. Cal. Nov. 26, 2012).

[9] Based on the Court's conclusion, the Court does not determine whether, if the vocational evidence submitted by plaintiff controlled over the testimony of the VE, the number of jobs reflected in plaintiff's evidence would constitute a "significant" number of jobs. See generally Beltran, 700 F.3d 389.